**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN WALLENBROCK, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-cv-00182-SRC |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

This matter comes before the Court on Plaintiff John Wallenbrock's request for judicial

review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security

denying Wallenbrock's application for supplemental security income under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  The Court affirms the Commissioner's decision.

**I.      Procedural history**

Wallenbrock filed a Title II application for disability benefits and a Title XVI application

for supplemental security income on February 7, 2018.  Tr. 25, 87–88.  The Social Security

Administration initially denied his applications on May 1, 2018.  Tr. 25, 90–96.  Wallenbrock

asked for a hearing before an ALJ on May 8, 2018.  Tr. 25, 94–106.  After a hearing, the ALJ

denied Wallenbrock's applications in a decision dated July 9, 2019.  Tr. 22–38.  On December 2,

2019, the Appeals Council denied Wallenbrock's request for review.  Tr. 1–7.  As such, the

ALJ's decision stands as the final decision of the Commissioner.

## II.      Decision of the ALJ

The ALJ determined that Wallenbrock has not engaged in substantial gainful activity since his alleged on-set date of May 9, 2017.  Tr. 28.  The ALJ found that Wallenbrock has severe impairments of degenerative disc disease, obesity, mood disorder, psychotic disorder, anxiety disorder, and ADHD.  *Id*.  The ALJ held that Wallenbrock does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 29.  The ALJ found Wallenbrock's debilitating complaints inconsistent with the record as a whole and assessed a residual functional capacity (RFC) for a reduced range of sedentary work.  Tr. 31–36.  *See* 20 C.F.R. §§ 404.1529, 416.929.  The ALJ also observed that Wallenbrock made inconsistent statements to doctors and exhibited drug-seeking behavior.  Tr. 35.

After considering the entire record, the ALJ determined that Wallenbrock had the RFC to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can never operate foot controls; [cannot] frequently reach, handle, and finger; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never crawl; no concentrated exposure to extreme heat, extreme cold, and vibration; no concentrated exposure to unprotected heights or hazardous machinery; able to perform simple, routine tasks, but can have only minimal changes in job setting and duties; no contact with the general public; and only occasional contact with co-workers and supervisors."  Tr. 31.  The ALJ concluded that a reduced sedentary RFC fully incorporated Wallenbrock's limitations, given his relatively normal findings at numerous visits, but with some limitations due to his degenerative disc disease.  Tr. 35.

2

The ALJ found that Wallenbrock could not perform any past relevant work.  Tr. 36.

After considering Wallenbrock's age, education, work experience, and RFC, the ALJ found that

jobs exist in significant numbers in the national economy that Wallenbrock can perform.  Tr. 37–

38.  Thus, the ALJ concluded that Wallenbrock "was not under a disability."  Tr. 38.

Wallenbrock appeals, arguing a lack of substantial evidence to support the Commissioner's RFC

determination.

## III.    Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the

claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant

is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a severe "impairment [that] significantly limits [the]

claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734,

738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it

3

amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations."  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3) (emphasis added).  If, upon

4

the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

IV.    **Discussion**

As noted above, the ALJ determined that Wallenbrock retains the RFC to perform

sedentary work with certain limitations, and that he can perform work that exists in significant

numbers in the national economy.  Wallenbrock argues that the Court should remand because the

ALJ failed to give the appropriate weight to Dr. Stone Kraushaar's and Dr. Paul Metcalf's

medical opinions, substantial evidence does not support the ALJ's RFC determination, and the

ALJ improperly discounted Wallenbrock's pain complaints.

A.    **The ALJ afforded appropriate weight to Dr. Kraushaar's and Dr. Metcalf's
      medical opinions**

ALJs must weigh all medical opinions, whether by treating or consultative examiners,

based on: (1) whether the provider examined the claimant; (2) whether the provider is a treating

source; (3) length of treatment relationship and frequency of examination, including nature and

extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory

findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7)

other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  "While

an ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d),[1] he need not explicitly

address each of the factors."  *Derda v. Astrue*, 2011 WL 1304909, at *10 (E.D. Mo. 2011)

(collecting cases).

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017,

ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to

any medical opinion.  *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, ALJs must evaluate

the persuasiveness of medical opinions and prior administrative medical findings in light of

---

[1] The 2011 version of 20 C.F.R. § 404.1527, at issue in *Derda*, listed the factors for ALJs to consider in determining weight to give medical opinions in section (d).  The regulation has been amended and the latest version lists the factors in section (c).

several factors, the most important of which are supportability and consistency with the record.

*Id.* ALJs must explain how they considered the factors of supportability and consistency in their

decisions but need not explain how they considered the other factors. 20 C.F.R. §

404.1520c(b)(2).

### 1. Dr. Kraushaar's medical opinion

Wallenbrock briefly argues that the ALJ erred in failing to give proper weight to Dr.

Kraushaar's psychiatric opinion that Wallenbrock had a "marked impairment" in his ability to

manage and care for himself. Tr. 829; Doc. 14 at 4–5. Dr. Kraushaar performed a one-time

psychiatric evaluation for Wallenbrock for purposes of Medicaid eligibility in August 2018.

Doc. 14 at 4. Dr. Kraushaar opined that Wallenbrock had moderate impairment in his ability to

understand, remember, or apply information; moderate impairment in his ability to interact with

others; no impairment in his ability to concentrate, persist at tasks, or maintain pace; and marked

impairment in his ability to adapt and manage himself. Tr. 829.

The ALJ considered the opinion by Dr. Kraushaar but afforded it little weight. Tr. 35,

826–29. The ALJ reasoned that Wallenbrock had mostly normal signs during his mental status

examination conducted by Dr. Kraushaar. Tr. 35, 827–28. Although Wallenbrock appeared

depressed with a flat affect, he did not exhibit preoccupations, thought disturbances, perceptual

distortions, hallucinations, or delusions; gave responses that were coherent, relevant, and logical;

and was able to complete serial threes and basic math problems. Tr. 828. The ALJ found that

Dr. Kraushaar's medical opinion conflicted with Dr. Kraushaar's own findings during his

examination of Wallenbrock. Tr. 35. Dr. Kraushaar only relied on Wallenbrock's complaints

that he was only able to take care of himself only "about 10% of the time." Tr. 829. Dr.

Kraushaar's examination revealed, however, that Wallenbrock exhibited normal signs during his mental-status exam.  Tr. 827–28.

The Court finds that the ALJ properly considered the regulatory factors in assigning little weight to Dr. Kraushaar's opinion.  The ALJ gave the opinion little weight because it was inconsistent with medical evidence in the record, which serves as an appropriate ground to discount medical opinion testimony.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000)); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) (finding that inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a physician's opinion (citation omitted)).  Additionally, Dr. Kraushaar only saw Wallenbrock for a one-time Medicaid-eligibility examination, so the ALJ did not have to afford his opinion significant weight.  *McCoy v. Schweiker*, 683 F.2d 1138, 1147 n.8 (8th Cir. 1982) ("[T]his Court has held that as a general rule little weight is afforded to . . . reports of consulting physicians who examine the claimant only on one occasion." (citing *Brand v. Secretary of Health, Education and Welfare*, 623 F.2d 523, 527 n.6 (8th Cir. 1980)).

Wallenbrock argues that the lack of consistency between Dr. Kraushaar's opinion and his medical findings is "not an acceptable reason to discount the opinion" because Dr. Kraushaar's opinion was "based upon an examination on the plaintiff, including a review of his mental health history."  Doc. 14 at 4.  For support, Wallenbrock cites *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) and *Davis v. Callahan*, 985 F. Supp. 907, 912 (S.D. Iowa 1997), asserting that an

8

ALJ may not discount a medical opinion simply because the medical professional based the opinion on a patient's complaints and self-reported medical history. *See Flanery*, 112 F.3d at 350 ("A patient's report of complaints, or history, is an essential diagnostic tool.").

Contrary to Wallenbrock's contention, the degree to which Dr. Kraushaar's opinion is unsupported by his own medical findings is a valid factor for the ALJ to consider. *See* 20 C.F.R. § 404.1527(c)(4). And Dr. Kraushaar did not state to what extent he relied on his clinical observations as opposed to Wallenbrock's complaints. Tr. 826–29. By the doctor's failing to do so, the ALJ could properly assign him less weight because "the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight ALJs will give to that opinion." 20 C.F.R. § 404.1527(c)(3). In sum, the ALJ found Dr. Kraushaar's opinion inconsistent with the other medical evidence in the record, including his own treatment notes. Accordingly, the ALJ properly afforded Dr. Kraushaar's opinion little weight.

## 2. Dr. Metcalf's medical opinions

Wallenbrock argues that the ALJ erred in failing to give proper weight to Dr. Metcalf's opinions regarding Wallenbrock's physical impairments. Doc. 14 at 5–8. Dr. Metcalf is Wallenbrock's treating physician, and he issued multiple medical opinions on Wallenbrock from 2018 to 2019. Tr. 35–36, 529, 576, 578–79, 637–38, 892–95.

In February 2018, Dr. Metcalf opined that Wallenbrock was "unable to maintain employment due to pain/psych issues." Tr. 35–36, 529. The ALJ afforded this opinion little weight since it did not discuss any functional limitations or the basis for the alleged disability. Tr. 35.

9

In November 2018, Dr. Metcalf stated that, due to low back pain and elbow pain, Wallenbrock could not lift more than 20 pounds.  Tr. 36, 578.  The ALJ found this opinion somewhat persuasive since the records showed some degenerative disc disease but no evidence to support an impairment that would cause elbow pain.  Tr. 36.  Dr. Metcalf also completed a checkbox form for a disability placard, in which he checked a box indicating that Wallenbrock could not walk 50 feet without stopping to rest due to a severe and disabling physical condition. Tr. 36, 576.

In December 2018, Dr. Metcalf wrote in a one-paragraph letter that Wallenbrock is disabled, would benefit from a home health aide, and could walk only 10-feet without having to sit down due to back pain.  Tr. 36, 579, 637–38.  And in April 2019, Dr. Metcalf completed a physical RFC questionnaire and indicated that, during an 8-hour workday, Wallenbrock could sit for up to 5 minutes at a time and less than 2 hours total, stand for up to 5 minutes at a time, stand/walk less than 2 hours total, rarely lift items weighing less than 10 pounds, never lift items weighing 10 pounds or more, rarely move his neck or hold his head in a static position, and never perform any reaching.  Tr. 36, 892–95.  Dr. Metcalf also indicated on the form that Wallenbrock could use his hands (for gross motor manipulation) and fingers (for fine motor manipulation) up to only 10% of the workday each.  Tr. 894. The ALJ found each of these opinions not persuasive and afforded them little weight.  Tr. 36.

In assigning Dr. Metcalf's opinions their appropriate weight, the ALJ reasoned that the opinions were inconsistent with a January 2019 lumbar MRI that showed no significant problems in the lumbar spine and with multiple examinations that showed no significant loss of strength or sensation.  Tr. 36, 336, 342, 470, 486, 529, 533, 537, 587, 596, 599–600, 604, 607–08, 611, 667, 747.  In particular, the ALJ found no evidence in the record to support the suggestion that

10

Wallenbrock could not walk even 10-feet without having to sit down.  Tr. 36.  In April 2018, Wallenbrock exhibited normal muscle tone and no difficulty with gait or balance when he visited the hospital.  Tr. 763.  And in December 2018, Wallenbrock indicated at an emergency room visit that he had been able to climb a ladder into the attic above his garage.  Tr. 36, 589, 799. The ALJ also found the limitations suggested by Dr. Metcalf unsupported by the doctor's own records.  Tr. 36.  The ALJ noted that Dr. Metcalf recorded entirely normal lumbar spine MRI findings in January 2019.  Tr. 36, 747.  Dr. Metcalf even noted that Wallenbrock's back pain did not appear to result from structural issues in his lumbar spine.  Tr. 34–35, 589, 747. Examinations by Dr. Metcalf showed 5/5 muscle strength in all major muscle groups in December 2016, March 2017, July 2017, November 2018, December 2018, January 2019, and March 2019.  Tr. 537, 544, 547, 587, 591, 596, 600.

While some medical evidence must support the ALJ's RFC finding, there is no requirement that the evidence take the form of a medical opinion.  *See Hensley*, 829 F.3d at 932; *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012).  The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion.  *See Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013); *see also Perks*, 687 F.3d at 1092-93 ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC.").  Indeed, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (alteration in original)).

11

The Court observes that "a treating physician's opinion as to whether a patient is disabled or unable to work is not dispositive because these are 'issues reserved to the Commissioner and are not the type of opinions which receive controlling weight.'"  *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)). Such a declaration is "inherently neither valuable nor persuasive" and the ALJ did not have to analyze it in her decision.  20 C.F.R. §§ 404.1520b(c), 416.920b(c).  Thus, Dr. Metcalf's February 2018 opinion that Wallenbrock could not work is not entitled to any controlling weight.

In addition, medical opinions that take the form of "checked boxes, circled answers, and brief fill-in-the-blank responses" without additional evidence or elaboration are conclusory and possess "little evidentiary value" for an RFC determination.  *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)).  These kinds of medical opinions, by themselves, do not amount to substantial evidence.  *See O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("Because of the interpretive problems inherent in the use of forms such as the physical capacities checklist, our Court has held that while these forms are admissible, they are entitled to little weight and do not constitute "substantial evidence" on the record as a whole."); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) ("("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration."); *see also Swigert v. Astrue*, 226 Fed.Appx. 628 (8th Cir. 2007) ("A treating physician's checkmarks on an MSS form may be discounted if they are contradicted by other objective medical evidence in the record.").

Here, two of Dr. Metcalf's opinions simply check boxes, circle answers, or fill in blanks on a generic form without further elaboration.  Tr. 576, 892–95.  Dr. Metcalf filled out a checkbox form for Wallenbrock's disability placard, where he checked that Wallenbrock could

not walk 50 feet without stopping to rest.  Tr. 576.  And Dr. Metcalf filled out a physical RFC questionnaire where he checked boxes, circled answers, and filled in blanks to indicate that Wallenbrock could only sit for up to 5 minutes at a time and less than 2 hours total, stand for up to 5 minutes at a time, and stand/walk less than 2 hours total, among other limitations.  Tr. 892–95.  The ALJ did not need to assign great weight to either of these medical opinions.

For the remaining opinions, the Court finds that the ALJ properly considered all of the regulatory factors in assigning little weight to Dr. Metcalf's medical opinions.  The more consistent an opinion is with the record as a whole, the more persuasive it is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  And the more relevant evidence and supporting explanations a source provides for an opinion, the more persuasive the opinion will be.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ gave Dr. Metcalf's opinions little weight because they were inconsistent with other substantial medical evidence in the record.  *See* § 404.1527(c)(4); *Wagner*, 499 F.3d at 849.  The ALJ discussed Wallenbrock's normal lumbar spine MRI results, repeated examinations showing normal strength and sensation, a lack of evidence supporting an elbow impairment, and Wallenbrock's ability to climb a ladder into his attic in December 2018, explaining that the record "does not support such extreme limitations" as those contained in Dr. Metcalf's opinions. Tr. 36.  The ALJ found Dr. Metcalf's opinions inconsistent with substantial medical evidence in the record.  *Id.*  Accordingly, the ALJ properly afforded Dr. Metcalf's opinions little weight.

B.      **Substantial evidence supports the ALJ's RFC determination**

Wallenbrock argues that substantial evidence does not support the ALJ's RFC determination because the ALJ disregarded the only medical opinion in the record that analyzed Wallenbrock's physical condition.  Doc. 14 at 6–8.  Wallenbrock contends that the ALJ

formulated the RFC assessment by "cherry picking" from among the relevant medical records and impermissibly drawing inferences from the medical reports.  Doc. 14 at 4, 6 (citing *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) ("An administrative law judge may not draw upon his own inferences from medical reports.")).  Specifically, Wallenbrock claims that the ALJ's reliance on the lumbar MRI results was an improper inference from Dr. Metcalf's medical report.  Doc. 14 at 7.

These arguments lack merit.  First, the ALJ's RFC finding need not come from any one particular medical opinion, as long as there is some medical evidence to support it.  *See Hensley*, 829 F.3d at 932; *Myers*, 721 F.3d at 526–27; *Perks*, 687 F.3d at 1092–93.  Second, while ALJs may not draw their own inferences from medical reports, they may consider the extent to which the relevant medical evidence does not support the conclusions in the report and weigh it accordingly.  *See* 20 C.F.R. § 404.1527(c)(4); *Wagner*, 499 F.3d at 849.  Consistent with the Eighth Circuit's instructions, the ALJ determined Wallenbrock's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitation."  *Myers*, 721 F.3d at 527 (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)) (alterations in original).

The ALJ acknowledged that Wallenbrock had degenerative disc disease but found that much of Wallenbrock's treatment showed normal signs of function.  Tr. 35.  In April 2018, Wallenbrock had all normal signs at an emergency room visit, including normal muscle tone and no difficulty with gait or balance.  Tr. 33, 35, 763.  Wallenbrock also showed normal strength and sensation at multiple hospital examinations throughout the relevant period.  Tr. 36, 336, 342, 470, 486, 529, 533, 537, 587, 596, 599–600, 604, 607-08, 611, 667.  And in January 2019, a lumbar spine MRI was normal, and Dr. Metcalf noted that Wallenbrock's lower back pain did

14

not appear to result from structural issues in his lumbar spine.  Tr. 34–35, 589, 747.
Wallenbrock points to his cervical spine CT results from January 2019, which show increasing
degeneration in his cervical discs and increased spur formation, claiming that the ALJ did not
consider all of the medical evidence in the record.  Doc. 14 at 6.  The ALJ addressed this
evidence however, finding that "the reduced sedentary residual functional capacity fully
incorporates his limitations given his relatively normal signs and scans on numerous visits, but
with some limitations due to his verifiable cervical and thoracic degenerative disc disease . . ."
Tr. 35.

Even if the Court found substantial medical evidence in the record supporting Dr.
Metcalf's opinion, it cannot remand simply because it "would have reached a different
conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v.
Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th
Cir. 2014)); *see also Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is
possible to draw two inconsistent positions from the evidence and one of those positions
represents the ALJ's findings, the court must affirm the ALJ's decision.").  Rather, this Court
must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v.
Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted).  Here, for the reasons
outlined above, the ALJ found inconsistencies between Dr. Metcalf's opinion and the other
medical evidence in the record, and substantial evidence supports the ALJ's finding.  Because
such a finding "falls within the available zone of choice," the ALJ permissibly afforded the
opinion little weight.

**C.      The ALJ properly discounted Wallenbrock's pain complaints**

Finally, Wallenbrock argues that the ALJ failed to properly evaluate Wallenbrock's pain

complaints.  Doc. 14 at 8–10.  Wallenbrock contends that the ALJ "evaluated the plaintiff's

credibility in general," but failed to "conduct a proper pain evaluation" because the ALJ relied on

the fact that objective medical evidence did not support Wallenbrock's claims.  Doc. 14 at 8

(citing *Beckley v. Apfel*, 152 F.3d 1056, 1059–60 (8th Cir. 1998) ("When assessing the

credibility of a claimant's subjective allegations of pain, however, the ALJ must consider the

claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage,

effectiveness and side effects of medication; precipitating and aggravating factors; and functional

restrictions.").

Although an ALJ may not disregard a claimant's complaints based solely on objective

medical evidence, it is one factor the ALJ may consider.  *See Forte v. Barnhart*, 377 F.3d 892,

895 (8th Cir. 2004) (citing *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000)).  ALJs may

consider inconsistencies between a claimant's complaints, personal history, and medical record

that further diminish the claimant's credibility.  *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir.

2017).  The ALJ appropriately began the RFC determination with an evaluation of

Wallenbrock's credibility.  *See Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (finding

a claimant's credibility is primarily a matter for the ALJ to decide); *see also Holmstrom v.

Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts." (citation omitted)).

In analyzing a claimant's subjective complaints, the regulations instruct ALJs to consider

the following factors:  (1) the claimant's daily activities; (2) the location, duration, frequency,

and intensity of the condition; (3) precipitating and aggravating factors; (4) type, dosage,

effectiveness, and side effects of medication; (5) treatment, other than medication; and (6) any measures you use or have used to relieve your pain or other symptoms; other factors concerning the claimant's functional restrictions.  20 C.F.R. § 404.1529(3).  Courts also consider the claimant's "relevant work history and the absence of objective medical evidence to support the complaints."  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).  The above factors stem from the Eighth Circuit's decision in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984).  *Id*.  "While ALJs must acknowledge and consider these so-called *Polaski* factors before discounting a claimant's subjective complaints, [the Eighth Circuit] ha[s] held that ALJs need not explicitly discuss each *Polaski* factor.  ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."  *Id*.  (citations and internal quotations omitted).

Wallenbrock stated he could not work, beginning in May 2017, due to heart problems, a herniated disc in the lumbar spine, bipolar disorder, depression, ADHD, left knee surgery, insomnia, anxiety, persistent genital arousal disorder, and trigeminal neuralgia.  Tr. 196.  He testified that he had "extreme pain all over his body, a constant erection, and trouble using his hands" as well as ongoing lower back pain that prevented him from working.  Tr. 32.  The ALJ stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  Tr. 32.  After considering this evidence, the ALJ found:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence
in the record . . .

Tr. 32.  The ALJ concluded:

> Overall, the claimant had degenerative disc disease and some mental issues.
> However, much of his treatment showed normal signs and the inconsistency of his
> stories makes it hard for the undersigned to give credence to the claimant's reports
> of how his injuries occurred and whether they were the reason he stopped working.
> The undersigned finds that the reduced sedentary residual functional capacity fully
> incorporates his limitations given his relatively normal signs and scans on
> numerous visits, but with some limitations due to his verifiable cervical and
> thoracic degenerative disc disease, and his potential for drug-seeking behavior.

Tr. 35.

The ALJ found the reliability of Wallenbrock's complaints reduced by inconsistencies

between Wallenbrock's statements and his medical treatment throughout the relevant period.  Tr.

35.  The ALJ observed that, Wallenbrock reported to an emergency room on March 13, 2017

with complaints of pain, but he went to another emergency room the next day without revealing

his prior visit or the negative test results he received there.  Tr. 32, 35, 334, 337–38, 345–52,

482–91.  Wallenbrock also reported to the second emergency room provider the wrong pharmacy

and an inflated dosage of Percocet.  Tr. 32, 35, 337.  The second emergency room doctor noted

that Wallenbrock had "plenty of narcotics," and the doctor did not "feel comfortable prescribing

additional schedule medications" because Wallenbrock had "objectively lied" and "skirted the

truth."  Tr. 32, 338.  Although Wallenbrock claims to have lost his job in May 2017 due to his

impairments, he told a doctor at Dr. Metcalf's practice that he lost his job because he reported an

assault, rather than from his alleged impairments.  Tr. 33, 35, 539.  And on April 30, 2018,

Wallenbrock went to the emergency room and told a story of injuring his left shoulder on a tree

stump three days earlier, but four days after that he informed Dr. Metcalf that he injured his left

shoulder by accidentally flipping over the handlebars of his daughter's bicycle.  Tr. 33, 35, 609, 616, 618.

The ALJ also considered Wallenbrock's drug-seeking behavior.  Tr. 35; *see also Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (when evaluating a claimant's complaints, an ALJ may consider evidence that a claimant engaged in drug-seeking behavior).  In addition to the above examples, the ALJ considered that Dr. Metcalf told Wallenbrock in July and October 2017 to wean off some of the controlled substances he took, for fear of addiction.  Tr. 33, 35, 533, 535, 537.  In April 2018, an emergency room doctor specifically reported that Wallenbrock had "a history of drug seeking behavior."  Tr. 761.  As the ALJ discussed, the emergency room doctor noted that Wallenbrock "refuse[d] to cooperate with exam and testing and [was] instead requesting pain medication and MRI."  Tr. 33, 35, 765–66.  Because Wallenbrock was unwilling to give direct answers to questions or to allow an examination that might support the use of such medications, the emergency room doctor ultimately felt uncomfortable prescribing opiate pain medication.  Tr. 33, 766.

Wallenbrock argues that the ALJ did not discuss all of the *Polaski* factors in evaluating his pain complaints, including his work history.  Doc. 14 at 9.  But "[a]n ALJ's decision need not explicitly discuss every possible factor in order to be sufficiently specific." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).  Additionally, the ALJ necessarily considered Wallenbrock's work history in her analysis.  The ALJ stated that Wallenbrock had past relevant work as driver and a line cook and found that that Wallenbrock's limitations prevented him from returning to this work.  Tr. 36.

Contrary to Wallenbrock's assertions, the ALJ's decision demonstrates that she properly considered all the evidence in the record in reaching her RFC determination, and gave good

reasons for discrediting Wallenbrock's testimony.  The Court defers to the ALJ's credibility determination regarding Wallenbrock's testimony.  *See Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the courts] will normally defer to that judgment." (internal quotation marks omitted); *see also Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Wallenbrock's [1] Complaint with prejudice. A separate judgment will accompany this Memorandum and Order.

So Ordered this 25th day of March 2021.

_____

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

20